29974.   A. A. A. HIGHWAY EXPRESS INC. *v.*
BONE & HENDRIX.

DECIDED JULY 14, 1943.   REHEARING DENIED JULY 27, 1943.

*R. J. Reynolds Jr., Theo J. McGee,* for plaintiff in error.
*John G. Cozart,* contra.

STEPHENS, P. J. (After stating the foregoing facts.) The liability of the defendant carrier necessarily depends on the beans having been frozen after they were delivered to the carrier in Atlanta and before delivery to the plaintiffs in Columbus. It is only where loss or damage to a shipment of goods by a carrier occurs after the goods have been received by the carrier and before delivery by the carrier to the consignee at the point of destination that there is any presumption of liability by the carrier. Code, § 18-102, reads as follows: "Carriers as such are bound to exercise ordinary diligence. Common carriers as such are bound to use extraordinary diligence, and in cases of loss the presumption of law is against them, and no excuse avails them unless the loss was occasioned by the act of God or the public enemies of the State." *Louisville & Nashville Railroad Co.* v. *Warfield,* 129 *Ga.* 473 (2) (59 S. E. 234); *Southern Railway Co.* v. *Standard Growers Exchange,* 34 *Ga. App.* 534 (130 S. E. 373); *Ohlen* v. *Atlanta & W. P. Railroad,* 2 *Ga. App.* 323 (58 S. E. 511). There is no evidence whatsoever, either positive or circumstantial, as to the condition of the beans when delivered to the plaintiffs by the defendant carrier. It appears from the testimony of E. I. Hyde, the agent of the defendant in charge of its office and place of business in Columbus, that the beans arrived in Columbus at about 9 o'clock on the morning of November 16, 1940; that it was very cold that morning, and that after they arrived the defendant placed the beans in its warehouse, but that in a very few minutes they were picked up by the plaintiffs. There is no evidence as to the state of the temperature of the warehouse in which the beans were placed in Columbus. So far as appears from the evidence the frozen condition of the beans was not discovered until their arrival at Fort Benning, some distance from Columbus, to which point the beans were transported and carried by the plaintiffs after the plaintiffs had received them from the carrier. It appears from the testimony of Ray E. Bone, an employee of the plaintiffs, that "on the 16th day of November 1940, the morning the beans were received," the weather was cold, and "very considerably below freezing." This witness was testifying as to happenings in Columbus on that morning as respects the transportation of the beans to Fort Benning and their rejection by the quartermaster at Fort Benning on the ground that they were frozen.

It is inferable that the witness was testifying as to the condition of the weather in Columbus and its vicinity on the morning the beans arrived and when they were transported by the plaintiffs to Fort Benning, and that on this morning the weather was considerably below freezing. There is no evidence whatsoever as to the manner in which the plaintiffs transported the beans from Columbus to Fort Benning, or what precautions, if any, the plaintiffs may have taken to protect the beans against freezing while being transported from Columbus to Fort Benning, or as to the period of time the beans were in transit from Columbus to Fort Benning. While it can not be held that this evidence demands the finding that the beans became frozen in transit from Columbus to Fort Benning, after they had been delivered to the plaintiffs by the defendant carrier, it suggests the possibility that the beans may have become frozen while in transit from Columbus to Fort Benning, and precludes any inference from the fact that the beans, after they had arrived at Fort Benning, were discovered to be frozen, that they were in such frozen condition when delivered to the plaintiffs by the defendant carrier.

Is there any evidence from which it could be inferred that the beans were in good condition and were not frozen when delivered to the carrier in Atlanta, and that they became frozen while being transported by the carrier to Columbus, after delivery to the carrier for transportation to Columbus? The only evidence whatsoever that could be relied on as affording any such inference is that, after the beans were picked up by the carrier in Atlanta at about 7:30 or 8 o'clock p. m., on November 15, by one of its pick-up trucks, and brought to the defendant's warehouse about 8:30 and placed in the warehouse, and shortly afterwards loaded into one of the defendant's trucks for transportation to Columbus, the truck in which the beans were to be transferred for shipment to Columbus was backed up to one of the large doors opening into the defendant's warehouse, and the beans placed in the truck towards the front end, and that the doors of the truck remained open while the loading of the truck was in progress, and "the loading continued for some time;" that after the loading was completed the doors of the truck were closed; that the truck left for Columbus between 2 and 3 a. m.; that when the beans were picked up in Atlanta the temperature was already below freezing there, and that

at 6:30 p. m. the temperature was 28 degrees. While it may be inferable from the testimony of L. A. Warnock of the Warnock Fruit Company, who handled the procurement of the beans and their delivery to the defendant carrier, that they were in good condition and were not frozen when they were delivered to the pick-up truck of the defendant carrier about 7:30 o'clock on the afternoon of November 15, 1940, it does not appear that after the beans were delivered to the pick-up truck of the defendant and placed in the defendant's warehouse, from which they were within a short time transferred to the defendant's truck for transportation to Columbus, where they were placed in the front end of the truck, they were exposed to the freezing temperature of the open air other than during the period when they were transferred from the pick-up truck to the defendant's warehouse, and afterwards transferred from the warehouse to the truck which was to transport them to Columbus. It does not appear for what period of time the beans may have been exposed to the open air in the freezing temperature when being transferred from the pick-up truck to the warehouse and from the warehouse to the truck. While it appears that the doors of the truck to which the beans were transferred from the defendant's warehouse for transportation to Columbus remained open while the truck was backed up to one of the doors opening into the defendant's warehouse, and that "the loading continued for some time," it appears undisputed that the beans were placed in the front end of the truck; that when the loading was completed the doors of the truck were closed, it does not appear that the beans were exposed for any appreciable time which would cause them to freeze after leaving the defendant's warehouse and being stored in the defendant's truck for transportation to Columbus. This evidence is not sufficient to authorize a finding that the beans became frozen after they were delivered to the defendant's pick-up truck and placed in the truck for transportation to Columbus and before they reached Fort Benning.

The acceptance and receipt of the beans from the plaintiffs by the defendant in Columbus, and the sale of the beans afterwards by the defendant in Atlanta, does not tend to show an admission by the defendant that the beans were frozen or damaged while in its possession and before delivery to the plaintiffs in Columbus. So far as it appears from the evidence the beans were sold by the

defendant pursuant to the terms of the shipping contract which authorized the sale of freight for the purpose of salvage. It does not appear that such right in the defendant to sell freight for salvage applies only to freight that is damaged in transit.

The evidence is not sufficient to show that the beans became frozen while in the possession of the defendant carrier after their delivery to the carrier in Atlanta for transportation to Columbus and before their delivery to the plaintiffs in Columbus. The finding of the judge of the municipal court for the plaintiffs was unauthorized, and the judge of the superior court erred in failing to sustain the defendant's certiorari.

*Judgment reversed. Sutton and Felton, JJ., concur.*

ON MOTION FOR REHEARING.

STEPHENS, P. J. Counsel for the movant insist that this court has gone beyond the contentions of the plaintiff in error and decided the case on a question not insisted on by the plaintiff in error and not authorized by the assignments of error in the bill of exceptions. We decided the case on the ground that the evidence is insufficient to authorize a verdict for the plaintiff. The defendant, in its motion for new trial, among the general grounds, assigned error on the judgment of the trial judge, acting as a trior of the facts, on the ground that it was without evidence to support it. The defendant, as petitioner in certiorari, assigned error on the overruling of the motion for new trial on the ground that the judgment of the trial judge was without evidence to support it. The defendant, who is plaintiff in error in this court, assigns error on the judgment of the judge of the superior court overruling the certiorari on the ground that this judgment was error, and specifically on the ground that it was error because "the judgment" was without evidence to support it. The defendant, as plaintiff in error in this court, in its brief, expressly relied on the ground that the verdict of the trial judge was without evidence to support it, and specifically contends that it does not appear from the evidence that the beans were frozen while in transit, but suggests that they could have become frozen after having been received from the express company in Columbus and while being transported to Fort Benning. While the plaintiff in error does, in all the assignments of error in the motion for new trial, in the petition for certiorari, and in the bill of exceptions, specifically assign error on the ground

that the cause of the freezing of the beans was by a so-called act of God, the plaintiff in error also assigns error as appears above, on the ground that the judgment of the trial judge was without evidence to support it, and relies on such ground in his brief.

There is therefore no merit in the motion for rehearing.

*Rehearing denied. Sutton and Felton, JJ., concur.*